STATE OF NORTH DAKOTA, EX REL. E. A. HUGHES, and HUGHES ELECTRIC COMPANY, Relators, Appellants, v. FRANK MILHOLLAN, C. W. McDonnell and W. H. Stutsman, Board of Railroad Commissioners of the State of North Dakota, and as Such Members of Such Board of Railroad Commissioners of the State of North Dakota, Respondents.

(195 N. W. 292.)

Note.— (2) Power of legislature to delegate to commission the power to fix rates to be charged by a public service corporation, see notes in 18 L.R.A.(N.S.) 713; 32 L.R.A.(N.S.) 639; 6 R. C. L. 180; 2 R. C. L. Supp. 46; 4 R. C. L. Supp. 388; 5 R. C. L. Supp. 324; 22 R. C. L. 783; 3 R. C. L. Supp. 1282; 4 R. C. L. Supp. 1476.

(3) Necessity of interest in question to attack constitutionality of law, see 6 R. C. L. 89; 2 R. C. L. Supp. 21; 4 R. C. L. Supp. 379; 5 R. C. L. Supp. 318.

**Public service commissions — orders of board of railroad commissioners establishing or changing rates reviewable both as to law and facts.**

1. The Public Utilities Act (Laws 1919, chap. 192) provides for a judicial review upon both law and facts of all orders made by the board of railroad commissioners, fixing, establishing or changing rates.

**Constitutional law — public utilities act held not void as vesting legislative or judicial powers in administrative officers.**

2. For reasons stated in the opinion it is held that the Public Utilities Act, conferring upon the board of railroad commissioners authority to conduct certain inquiries and make orders relating to public utilities, is not void as vesting legislative or judicial powers in administrative officers.

**Constitutional law — litigant can question validity of statute only when and in so far as it applied to his disadvantage.**

3. A litigant can be heard to question the validity of a statute only when, and in so far as, it is applied to his disadvantage.

Opinion filed August 20, 1923. Rehearing denied September 28, 1923.

Carriers, 10 C. J. § 637 p. 415 n. 90. Constitutional Law, 12 C. J. § 177 p. 760 n. 57; § 338 p. 851 n. 54; § 408 p. 902 n. 34.

Appeal from the District Court of Burleigh County, *Jansonius,* J.

The relators appeal from an order sustaining a demurrer to the complaint.

Affirmed.

*Edward B. Cox* and *Divet, Holt, Frame & Thorpe,* for appellants.

"The order here involved prescribed a complete schedule of maximum future rates and was legislative in character. Prentis v. Atlantic Coast Line R. Co: 211 U. S. 210, 53 L. ed. 150, 29 Sup. Ct. Rep. 67; Lake Erie & W. R. Co. v. State Pub. Utility Commission, 249 U. S. 422, 424, 63 L. ed. 684, 687, P.U.R.1919D, 459, 39 Sup. Ct. Rep. 345. In all such cases, if the owner claims confiscation of his property will result, the state must provide a fair opportunity for submitting that issue to a judicial tribunal for determination upon its own independent judgment as to both law and facts; otherwise the order is void because in conflict with the due process clause, 14th Amendment. Missouri P. R. Co. v. Tucker, 230 U. S. 340, 347, 57 L. ed. 1507, 1509, 33 Sup. Ct. Rep. 961; Wadley Southern R. Co. v. Georgia, 235 U. S. 651, 660, 661, 59 L. ed. 405, 411, P.U.R.1915A, 106, 35 Sup. Ct. Rep.

214; Missouri v. Chicago, B. & Q. R. Co. 241 U. S. 533, 538, 60 L. ed. 1148, 1154, 36 Sup. Ct. Rep. 715."

"Due process of law, as meaning of the words has been developed in American decisions, implies the administration of equal laws according to established rules not violative of the fundamental principles of private right by competent tribunal having jurisdiction of the case and proceeding upon notice and hearing." McGehee, Due Process of Law, p. 1.

"For rates made by the general assembly or administrative orders made by a commission are both legislative in their nature." Louisville & N. R. Co. v. Garrett, 231 U. S. 298–313; Grand Trunk R. Co. v. Indiana R. R. Commission, 221 U. S. 400–403.

"And anybody affected by such legislative action is entitled, by the due process clause, to a judicial review of the question as to whether he has been thereby deprived of a right protected by the Constitution." Wadley Southern R. Co. v. Georgia, 235 U. S. 651.

"It should be borne in mind, however, that due process of law involves, in many instances, the right to have a matter in dispute passed upon by a judicial tribunal. Hence an appeal to a court from the action of a nonjudicial body may be implied in the requirements as to due process of law." 6 R. C. L. p. 455.

"A hearing before judgment *with full opportunity to present all evidence* and the arguments which the party deems important is all that can be adjudged vital under the guaranty of due process of law." 6 R. C. L. p. 453.

"If his right to a hearing depends upon the will or caprice of others, or upon the discretion or will of the judge who is to make the decision upon the issue, he is not protected in his constitutional rights." Re Lambert (Cal.) 55 L.R.A. 860; Underwood v. People, 32 Mich. 1.

"Judicial power is authority vested in some court, officer or person to hear and determine when the rights of persons or property or the propriety of doing an act are the subject-matter of adjudication." State v. Blaisdell, 22 N. D. 86–96.

*Geo. F. Shafer,* Attorney General, and *John Thorpe,* Assistant Attorney General, for respondents.

"In our judgment the matter of fixing water rates is not judicial and for this reason the *writ of prohibition* cannot be awarded. This has

been frequently held by this court." Spring Valley Waterworks v. Bartlett, 63 Cal. 245.

"It is conceded that the board of railroad commissioners has no power to regulate, control or fix rates of the water company except as such power is given by statute for the Constitution does not profess to give the Railroad Commissioners *any* powers except such as shall be prescribed by law. Whatever power the board of railroad commissioners have to fix or change the rates of a public utility, like the water supply company, is conferred by Chap. 192, Laws 1919." City Commission of Bismarck v. Bismarck Water Supply Co. 47 N. D. 179, 181 N. W. 596; State v. Chicago, N. W. (N. D. Case) 46 N. D. 313, 179 N. W. 381; Union Stockyards Co. v. Railroad Comrs. 103 Neb. 224, 170 N. W. 908; Troutman v. Smith, 105 Ky. 231, 48 So. 1084; Brymer v. Butler Water Co. 179 Pa. 231, 36 L.R.A. 260, 36 Atl. 249.

"The doctrine has been approved by this court many times that unreasonable regulations are not within the authority conferred by law upon the railroad commissioners, and when it appears from the pleading or the evidence in a case that an order or regulation is unreasonable or unjust with reference to all the substantial interests effected by it, or violative of constitutional provisions for the protection of private property rights, such regulations will not be enforced by the courts." State v. Fla. E. Coast R. Co. 67 So. 906, P.U.R.1915C, 220.

"No one has a vested right in any given mode of procedure and so long as a substantial and efficient remedy remains, or is provided, due process of law is not denied by a legislative change." Crane v. Hahlo, 258 U. S. 142, 66 L. ed. 514, 42 Sup. Ct. Rep. 214.

"It is no longer open to contention that the due process clause of the 14th Amendment does not control mere forms of procedure in state courts or regulate the practice therein." L. & N. R. Co. v. Schmidt, 177 U. S. 230, 44 L. ed. 747.

"A valuation of property by a public service commission for rate-making purposes is not shown to be fair, where the facts upon which it is founded are not stated." Petersburg Gas Co. v. Petersburg, — Va. —, 20 L.R.A. 542, 110 S. E. 533.

"If then the defendant had notice and was given the right to show that the order asked for if granted would be unreasonable, it has not in this case been deprived of the right to a hearing." Washington v.

Fairchild, 224 U. S. 510, 56 L. ed. 863; Cincinnati, N. O. & T. R. R. Co. v. Interstate Commerce Commission, 162 U. S. 196; I. C. R. Co. v. Paducah (Ky.) 163 S. W. 239.

"The determination of a commission within established rules of law and supported by evidence are not to be superseded by the judgment of the courts even though the courts may be of the opinion that a better disposition might have been made of the matters involved." People v. Public Serv. Commission, 193 App. Div. 322, 183 N. Y. Supp. 930.

"The law specifies the facts which when found to exist are to control the action of the officials. It leaves very little room for the exercise of judgment or discretion on the facts when the facts are found. This does not constitute the exercise of judicial power in the sense that it is vested by the constitution, and our form of government in the courts. It is a sense in which nearly all administrative officials exercise judicial power." Russell v. Fargo, 28 N. D. 300, 148 N. W. 610.

"Manifestly, the court must inquire whether the commission's findings of fact are supported by evidence. If so supported, they are conclusive." Federal Trade Commission v. Curtis Pub. Co. 260 U. S. 568, 67 L. ed. 408, 43 Sup. Ct. Rep. 210.

"In conclusion we may say that if the word 'procure' is more than a tautological repetition of the word 'require,' it was only to confer the power of affirmative direction upon the commission, necessarily to be exercised in supplement to the action of the applicant and with the same publicity and opportunity of the applicant to meet adverse evidence, and the act construed as we construe it will take no power from the commission necessary to the performance of its duties and will leave no power with it that it can exercise to the detriment of any right assured to an applicant for a license by the Constitution of the United States." Bratton v. Chandler, 260 U. S. 110, 67 L. ed. 157, 43 Sup. Ct. Rep. 43; Enterprise Irrig. Dist. v. Tri-State Land Co. 92 Neb. 121, 138 N. W. 171.

*F. O. Hellstrom,* for interveners.

"When one devotes his property to a use in which the public has an interest, he in effect grants to the public an interest in that use, and must submit to be controlled by the public for the common good to the extent of the interest he has thus created." Munn v. Illinois, 94 U. S. 113.

Sec. 83 of the Constitution provides among other things that the powers and duties of the *commissioners* of *railroads shall be as prescribed* by *law*. It therefore follows that if so prescribed by law their duties may partake of the legislative, executive, and the judicial, within the purview of the Constitution otherwise their powers and functions are limited to simply drawing a stipulated salary, their powers and duties must of necessity be drawn from either or all three departments, and it has been so held in the case of State v. Chicago & N. W. R. Co. 179 N. W. 378. State v. Stutsman, 24 N. D. 68, 139 N. W. 83.

"We accept without question the proposition, that when our Constitution vested executive power in the governor and legislative power in legislative assembly and the judicial power in the judiciary, these grants were in their nature exclusive, and that neither department, as such could rightfully exercise any of the functions, necessarily belonging to another department." Ohio Valley Water Co. v. Ben Avon, 253 U. S. 287, 64 L. ed. 908, P.U.R.1920E, 814, 40 Sup. Ct. Rep. 527.

CHRISTIANSON, J.   The relator, Hughes Electric Company, is a public utility corporation engaged in the business of selling and distributing electricity for light, power, and heat, and also steam for heating purposes in the city of Bismarck and the territory adjacent thereto. The relator Hughes is an officer and stockholder of the Hughes Electric Company.   The respondents are the board of railroad commissioners of the state of North Dakota.   The action is one to restrain and prohibit the said board of railroad commissioners from proceeding with a hearing under the Public Utility Act.   The defendants interposed a general demurrer to the complaint.   The trial court sustained the demurrer and the relators have appealed.

The petition alleges that the legislature by chapter 192, Laws 1919, attempted to confer upon the board of railroad commissioners the right to regulate, control and fix rates, charges and services of public utilities of the kind and character of the Hughes Electric Company, and "that assuming and pretending to act by virtue of the authority contained in said chapter 192, of the laws of 1919, the said above named defendants and respondents did, on the 23rd day of October, 1922, deliver to and serve upon the said Hughes Electric Company, a certain petition, entitled 'the patrons and consumers of electric current and steam heat with-

in the city of Bismarck, county of Burleigh and state of North Dakota, petitioners, against Hughes Electric Company, a corporation, respondents', which petition purported to be signed by one F. O. Hellstrom, as attorney and by some nineteen alleged patrons and consumers of electricity or steam heat furnished by the said Hughes Electric Company.

"That subsequent thereto and on the 9th day of December, 1922, the said defendants and respondents, purporting and claiming to act as the board of railroad commissioners, did serve upon the said Hughes Electric Company a notice of hearing, in which said notice, it was claimed that said petition heretofore referred to, dated October 23d, 1922, had been received by the said board of railroad commissioners and that a hearing upon the same was, by said notice, fixed and set for Friday, December 29th, 1922 at 10 o'clock A. M. and said board of railroad commissioners did notify the said plaintiff, Hughes Electric Company, that at said time, they were required to be present and that said petition would be considered and acted upon and that the said board of railroad commissioners would enter into a complete investigation of all of the rates, charges and practices of the said Hughes Electric Company for the purpose of determining and fixing reasonable electric and steam heat rates.

"That the said board of railroad commissioners assert, claim and threaten that they will conduct said hearing and investigation and will, upon the said petition, fix and establish the rates and charges to be made by the said Hughes Electric Company in furnishing of electricity and heat in its business and to its customers, and that they will assert and claim the right, power and lawful authority to so fix and establish said rates and charges."

It is alleged that chapter 192, Laws of 1919, is violative of § 2, of article 4, and the 14th Amendment of the Federal Constitution, and §§ 1, 23–25, 82, 83 and 85 of the state Constitution.

The constitutional objections raised by the relators are:

1. That there is a denial of due process and of the equal protection of the laws because the act "does not provide for a full and complete hearing before judgment with an opportunity to present all competent and relevant evidence and does not provide for a substantial, adequate and judicial review wherein the court may exercise its independent judgment as to both the law and the facts."

2. That there is an unwarranted delegation of judicial power to the Board of Railroad Commissioners.

3. That the act contains an unwarranted delegation of legislative powers.

4. That the penalties provided by the act for disobedience of the orders of the railroad commissioners are so severe as to intimidate public utility companies from assailing such orders in the courts, and that, consequently, the right of judicial review is in effect denied. The propositions will be considered in the order stated.

The Public Utilities Act (Laws 1919, chap. 192), contains the following provisions:

Section 3. "The Commissioners are hereby given the power to investigate all methods and practices of public utilities or other persons; subject to the provisions of this Act; to require them to conform to the laws of this State and to all rules, regulations and orders of the Commissioners not contrary to law; to require copies of reports, rates, classifications, schedules and time tables in effect and used by such utilities or other persons to be filed with the Commissioners and all other information desired by the Commissioners relating to such investigations and requirements.

"The Commissioners may compel obedience to its lawful orders by proceedings of mandamus or injunction or other proper proceedings in the name of the State in any court having jurisdiction of the parties or of the subject matter, and such proceedings shall have priority over all pending cases.

"The Commissioners may change any intra-state rate, charge or toll which is unjust or unreasonable, and may, after *hearing and notice,* prescribe such rate, fare, charge, or toll as is just and reasonable, and change or prohibit any particular device or method of service in order to prevent undue discrimination or favoritism between persons, localities, or classes of freight.

"Every order entered by the Commissioners shall continue in force until the expiration of the time, if any, named by the Commissioners in such order or until revoked or modified by the Commissioners unless the same be suspended, modified or revoked by order or decree of a court of competent jurisdiction."

Section 4. "The Commissioners shall have the power, *after notice*

*and hearing,* to enforce, originate, establish, modify or adjust and promulgate tariffs, rates, joint rates, tolls and charges of all public utility corporations and whenever the Commissioners shall, *after hearing,* find any existing rates, tolls, tariffs, joint rates or schedules unjust, unreasonable, insufficient or unjustly discriminatory or otherwise in violation of any of the provisions of this Act, the Commissioners shall, by an order, fix reasonable rates, joint rates, tariffs, tolls, charges or schedules to be followed in the future in lieu of those found to be unjust, unreasonable, insufficient or unjustly discriminatory or otherwise in violation of any provision of law. . . ."

Section 5. "Whenever the Commissioners shall find, *after hearing,* that the rules, regulations, practices, equipment, appliances, facilities or service of any public utility, or the methods of manufacture, distribution, transmission, storage, or supply employed by it are unjust, unreasonable, unsafe, improper, inadequate, or insufficient, the Commissioners shall determine the just, reasonable, safe, proper, adequate or sufficient rules, regulations, practices, equipment, appliances, facilities, service, or methods to be observed, furnished, constructed, enforced or employed, and shall, *after hearing,* fix the same by its order, rule or regulation. The Commissioners shall prescribe, *after hearing,* rules and regulations for the performance of any service or the furnishing of any commodity, of a character furnished or supplied by any public utility and, on demand and tender of rates, such public utility shall furnish such commodity and render such service within the time and upon the conditions provided in such rules. . . ."

Section 24. "All hearings, investigations and proceedings shall be public and shall be governed by this Act and by the rules of practice and procedure to be adopted by the Commissioners and in the conduct thereof, the technical rules of evidence shall not be applied. No formality in any hearing, investigation or proceeding or in the manner of taking testimony, shall invalidate any order, decision, rule or regulation made, approved or confirmed by the Commissioners."

Section 30. "Complaint may be made by the Commissioners of its own motion or by any corporation or person, chamber of commerce, board of trade, or any civic, commercial, mercantile, traffic, agricultural or manufacturing association or organization or any body politic or municipal corporation, by petition or complaint in writing, setting

forth any fact or thing done or omitted to be done, by any public utility, including any rule, regulation or charge heretofore established or fixed by or for any public utility, in violation or claimed to be in violation of any provision of law or of any order or rule of the Commissioners. The Commissioners shall fix the time when and place where a hearing will be had upon the complaint and shall serve notice thereof upon the complainant and the utility affected thereby not less than ten days before the time set for such hearing, unless the Commissioners shall find that public necessity requires that such hearing be held at an earlier date, provided, that no complaint shall be entertained by the Commissioners, except on its own motion, as to the reasonableness of any rates or charges, of any heat, gas, electrical, water or telephone utility, unless the same be signed by the mayor, council, commission or other legislative body of the county, city, town, or village, if any, within which the alleged violation occurred, or not less than fifteen consumers or purchasers or prospective consumers or purchasers of such heat, gas, electrical, water or telephone service."

Section 31. "At the time fixed for a hearing before the Commissioners or a Commissioner, or the time to which the same may have been continued, the complainant and the utility or person complained of, and such corporations or persons as the Commissioners may allow to intervene, shall be entitled to be heard and to introduce evidence. . . ."

Section 32. "The Commissioners may, at any time, upon notice to the public utility affected and after opportunity to be heard as provided in the case of complaints, rescind, alter or amend any decision made by it. Any order rescinding, altering or amending a prior order or decision shall, when served upon the public utility affected, have the same effect as is herein provided for original orders or decisions."

Section 33. "In all collateral actions or proceedings, the orders and decisions of the Commissioners which have become final shall be conclusive."

Section 34. "Any party to any controversy heard by the Commissioners feeling aggrieved by the decision or by the entry of any final order of the Commissioners therein may appeal therefrom the District Court in the district in which the hearings of the Commissioners were held in the matter, by serving notice in writing on all other parties to

50 N. D.—13.

said controversy and on the Commissioners within thirty days after the rendering of said decision and entry of the final order therein by the Commissioners."

Section 35. "On such appeal the lawfulness of the decision or final order shall be inquired into and determined on the record of the Commissioners as certified to by it. No new or additional evidence shall be taken on such appeal or introduced in evidence by any parties to such hearing on appeal in the district court. Any appeal from any final order of the Commissioners shall not suspend or delay the execution or operation thereof pending the appeal and final determination thereof, but the court in which such appeal is pending may in its discretion suspend in whole or in part the operation of the Commissioners' order or decision. . . ."

Section 37. "The Commissioners, for the purpose of ascertaining the reasonableness and justice of the rates and charges of public utilities, or for any other purpose authorized by law, shall investigate and determine the value of the property of every public utility used and useful for the service and convenience of the public, excluding therefrom the value of any franchise or right to own, operate or enjoy the same in excess of the amount (exclusive of any tax or annual charge) actually paid to any political subdivision of the State or County as a consideration for the grant of such franchise or right by reason of a monopoly or merger. The Commissioners shall prescribe the details of the inventory of the property of each public utility. . . ."

Section 38. "The Commissioners, during the making of the valuation herein provided for and for the purpose thereof, shall thereafter in like manner keep itself informed through its experts and other assistants of all extensions and improvements or other changes in the conditions and values of the property of all public utilities and shall ascertain the value of such extensions, improvements and changes and shall from time to time, as may be required for the proper regulation of such utilities, revise and correct its valuation of such property. Such revaluation and correction shall be filed in the same manner as is provided for original reports."

Section 39. "The Commissioners, whenever they shall have completed a valuation of the property of any public utility and before such valuation shall have become final, shall give notice by registered letter

to such public utility. If, within thirty days after such notice, no protest shall have been filed with the Commissioners, then said valuation shall become final. If notice of protest shall have been filed, however, by any such public utility, the Commissioners shall fix the time of hearing the same and *shall consider at such hearing* any matter material thereto, presented by such public utility in support of its protest. If, after the hearing of any protest (if any valuation was fixed), the Commissioners shall be of the opinion that its inventory is incomplete or incorrect or that its valuation is incorrect, it shall make such changes as may be necessary and shall issue an order making such corrected valuation final. The final valuation by the Commissioners and all classifications made for the ascertainment of such valuations shall be public and shall be prima facie evidence relative to the value of the property."

Section 40. "For the purpose of ascertaining the reasonableness and justice of the rates and charges of public utilities or for any other purpose authorized by law, the Commissioners may cause a hearing or hearings to be held at such time or times and place or places as the Commissioners may designate to determine the value of the property of public utilities actually used or useful for the convenience of the public, excluding therefrom the value of any franchise or right, to own, operate or enjoy the same in excess of the amount (exclusive of any tax or annual charge) actually paid to any political subdivision of the State or county as a consideration of such franchise or right, and exclusive of any value to the right by reason of monopoly or merger."

Section 41. "Before any hearing is had, the Commissioners shall give the public utility affected thereby at least thirty days' written notice, specifying the time and place of said hearing. This provision shall not prevent the Commissioners from making any preliminary examination or investigation into the matters herein referred to or from inquiring into such matters in any other investigation or hearing."

Section 42. "The public utilities affected shall be entitled to be heard and to introduce evidence at such hearing or hearings. The Commissioners are empowered to resort to any other source of information available. The evidence introduced at such hearing shall be reduced to writing and certified under the seal of the Commissioners. The Commissioners shall make and file their findings of fact in writing

upon all matters concerning which evidence shall have been introduced before it which, in its judgment, have a bearing on the value of the property of the public utility. Such findings shall be subject to review by the Supreme Court of this State in the same manner and within the same time as other orders and decisions of the Commissioners."

Relators contend that under § 24 of the act the board of railroad commissioners may adopt such rules and regulations as will in effect deny a hearing. It is said that the commissioners may reject relevant and competent evidence; and that inasmuch as the court on appeal is restricted to a consideration of the evidence—taken before and certified by the commissioners a party may in effect be denied a hearing according to the law of the land.

In our opinion the contention is untenable. It will be noted that the legislature has provided that the commissioners can act only after notice and hearing. In City Commission v. Bismarck Water Supply Co. 47 N. D. 179, 188, 181 N. W. 596, this court said: "The Public Utilities Act is replete with the requirement of notice and hearing." The word "hearing" contemplates an opportunity to be heard. That is, not merely the privilege to be present when the matter is being considered but, the right to present one's contention and to support the same by proof and argument. If the Commissioners act without notice in the cases where the law requires it, their act will be void and of no effect. In City Commission v. Bismarck Water Supply Co. supra, this court ruled that an increase in water rates ordered by the Commissioners without notice and hearing was void. In the opinion in that case it was said: "As we construe the Public Utilities Act, rate increases cannot be ordered except after notice and hearing. And as we read the record certified to us there was neither notice nor hearing of a proceeding for an increase in rates here. Hence, the order granting such increase is void. . . .

"On the oral argument it was contended that the railroad commissioners are authorized to make investigation for themselves and to obtain the necessary information to enable them to act in those matters wherein the Public Utilities Act gives them power to act. The record here does not show that the railroad commissioners initiated any proceeding on their own motion. They purported to be hearing a definite controversy which was being submitted to them. Nor do we believe

that the act empowers the railroad commissioners to make findings and orders upon specific investigations without affording interested parties notice and hearing. On the contrary we believe that the act clearly contemplates that notice and hearing shall be afforded in all cases where it is sought to change existing rates. . . .

"It is also suggested on the oral argument that the railroad commissioners had authority to order an increase in rates if they found that to be necessary to enable the Water Supply Company to do some of the things which the city commissioners had asked that it be required to do. We do not believe this argument is sound. When in the determination of a matter submitted to a court it becomes apparent that, to make a full determination, other issues or parties are necessary, the court does not proceed to decide those matters in the absence of issues and parties, but requires issues to be formed and the proper parties to be brought in. While the board of railroad commissioners is an administrative body, it exercises quasi-judicial powers, and is subject to the requirement of due notice. If the board of railroad commissioners deemed it desirable, of their own motion, to take up and determine whether the rates of the Water Supply Company ought to be raised, it should have given notice and afforded hearing thereon before making a determination."

Much of this language is applicable here. The inquiry which it is sought to have enjoined and prohibited here is not only required to be conducted after notice, but the statute further specifically provides that the utility affected "shall be entitled to be heard and to introduce evidence," at the hearing. It is not contended that the commissioners have adopted any arbitrary or unreasonable rules and regulations and it has been said that this of itself is a sufficient answer to the constitutional objection. New York ex rel. Lieberman v. Van De Carr, 199 U. S. 552, 560, 50 L. ed. 305, 310, 26 Sup. Ct. Rep. 144. But it is said by the relators that the "constitutionality of the law must be tested not by what has been or is being done under it, but by the things which it *authorizes* to be done." State ex rel. Frich v. Stark County, 14 N. D. 368, 103 N. W. 913. This rule, of course, like all others affecting the constitutionality of legislation is subject to the principle that "all constitutional inhibitions . . . and all constitutional guaranties are for the benefit of those persons only whose rights are affected, and cannot be taken advantage of by any other persons." State ex rel. Linde

v. Taylor, 33 N. D. 76, L.R.A.1918B, 156, 156 N. W. 561, Ann. Cas.
1918A, 583. See also Rindge Co. v. Los Angeles County, 262 U. S.
700, 67 L. ed. 1186, 43 Sup. Ct. Rep. 689. But it is clear that the
legislature has not authorized the commissioners to adopt rules and
regulations which will result in a denial of due process. The power
conferred upon the commissioners to adopt rules and regulations is of
necessity limited to the adoption of rules and regulations consonant
with the provisions of the Utility Act and not violative of any other
law either statutory or constitutional.

The legislature in imposing certain duties and conferring certain
powers upon the commissioners said that they must be performed in
a certain manner. It said that the commissioners could conduct cer-
tain inquiries and make orders with respect to the matters inquired in-
to; but it said in the most emphatic language possible that any such
inquiry must be conducted at a public hearing, after notice to the par-
ties affected, and that such parties "should be entitled to be heard and
introduce evidence" at such hearing. It is utterly inconsistent with
the whole tenor of the act to impute to the legislature any intention to
invest the commissioners with power, by rules and regulations, in effect
to deny the parties any hearing whatever. For "notice is only for the
purpose of affording the party an opportunity of being heard upon the
claim or the charges made; it is a summons to him to appear and speak,
if he has anything to say, why the judgment sought should not be ren-
dered. The denial to a party of the benefit of the notice would be in
effect to deny that he is entitled to notice at all, and the sham and de-
ceptive proceeding had better be omitted altogether. It would be like
saying to the party, appear and you shall be heard; and, when he has
appeared saying your appearance shall not be recognized, and you shall
not be heard." Hovey v. Elliott, 167 U. S. 409, 415, 42 L. ed. 215,
220, 17 Sup. Ct. Rep. 841. The presumption is that public officers
will discharge their duties honestly and in accordance with the rules
of law and that presumption is applicable here. New York ex rel.
Lieberman v. Van De Carr, 199 U. S. 552, 50 L. ed. 305, 26 Sup. Ct.
Rep. 144; Hall v. Geiger-Jones Co. 242 U. S. 539, 61 L. ed. 480,
L.R.A.1917F, 514, 37 Sup. Ct. Rep. 217, Ann. Cas. 1917C, 643;
Douglas v. Noble, 261 U. S. 165, 67 L. ed. 590, 43 Sup. Ct. Rep. 303.

In Hall v. Geiger-Jones Co. supra, it was urged against the Ohio

Blue Sky Law that it conferred arbitrary powers upon the commissioner; that no standard was given to guide or determine his decision; and that, consequently, the discretion vested in him left "room for the play and action of purely arbitrary power." In answering that contention the Federal Supreme Court said:

"In considering the contentions we must keep in mind that the law is addressed to a complex situation. . . . The discretion of the commissioner is qualified by his duty, and besides, as we have seen, the statute gives judicial review of his action. Pending such review, we must accord to the commissioner a proper sense of duty and the presumption that the functions intrusted to him will be executed in the public interest, . . . and, as we have said, in cases where there can be a dispute of fact, the statute provides for judicial review, and we see no legal objection to the designation of a particular court for such review."

In Mutual Film Corp. v. Industrial Commission, 236 U. S. 230, 59 L. ed. 552, 35 Sup. Ct. Rep. 387, Ann. Cas. 1916C, 296, it was urged that the statute there involved was invalid because "it attempts to delegate legislative power to censors and to other boards to determine whether the statute offends in the particulars designated." 236 U. S. 239. In considering that question the United States Supreme Court said:

"The next contention of the complainant is that the Ohio statute is a delegation of legislative power, and void for that if not for the other reasons charged against it, which we have discussed. While administration and legislation are quite distinct powers, the line which separates exactly their exercise is not easy to define in words. It is best recognized in illustrations. Undoubtedly the legislature must declare the policy of the law and fix the legal principles which are to control in given cases; but an administrative body may be invested with the power to ascertain the facts and conditions to which the policy and principles apply. If this could not be done there would be infinite confusion in the laws, and in an effort to detail and to particularize, they would miss sufficiency both in provision and execution.

"The objection to the statute is that it furnishes no standard of what is educational, moral, amusing, or harmless, and hence leaves decision to arbitrary judgment, whim and caprice; or, aside from those ex-

tremes, leaving it to the different views which might be entertained of the effect of the pictures, permitting the 'personal' equation to enter, resulting 'in unjust discrimination against some propagandist film,' while others might be approved without question. But the statute by its provisions guards against such variant judgments, and its terms, like other general terms, get precision from the sense and experience of men, and become certain and useful guides in reasoning and conduct. The exact specification of the instances of their application would be as impossible as the attempt would be futile. Upon such sense and experience, therefore, the law properly relies. This has many analogies and direct examples in cases, and we may cite Gundling v. Chicago, 177 U. S. 183, 44 L. ed. 725, 20 Sup. Ct. Rep. 633; Red "C" Oil Mfg. Co. v. Board of Agriculture, 222 U. S. 380, 56 L. ed. 240, 32 Sup. Ct. Rep. 152; Monongahela Bridge Co. v. United States, 216 U. S. 177, 54 L. ed. 435, 30 Sup. Ct. Rep. 356; Buttfield v. Stranahan, 192 U. S. 470, 48 L. ed. 525, 24 Sup. Ct. Rep. 349. See also, Waters-Pierce Oil Co. v. Texas, 212 U. S. 86, 53 L. ed. 417, 29 Sup. Ct. Rep. 220. If this were not so, the many administrative agencies created by the state and national governments would be denuded of their utility, and government in some of its most important exercises become impossible." 236 U. S. 245, 246.

Nor do we think there is any merit in the contention that under § 42 the commissioners are authorized to base their orders upon matters not in evidence, and that hence effective judicial review of the facts may be precluded. The first three sentences in § 42 read: "The public utilities affected shall be entitled to be heard and to introduce evidence at such hearing or hearings. The commissioners are empowered to resort to any other source of information available. The evidence introduced at such hearing shall be reduced to writing and certified under the seal of the commissioners." Relators' objection is leveled at the second sentence. But when this sentence is read in connection with the other two sentences, and the provisions relating to the review of the evidence on appeal, it is apparent that what the legislature intended was to vest the commissioners with power and to confer upon them the duty to see that the full truth was elicited at such hearing. In other words the commissioners are not required to pass judgment and base their order merely upon the evidence presented by the utility

and other parties to the inquiry; but if for any reason they believed that the evidence introduced is incorrect or incomplete, and if they further believe that additional evidence is available bearing on the questions under consideration they have the power and it is their duty to "resort to any other source of information available," and have such evidence adduced and made a part of the record. It is, we think, clear that the legislature intended that all evidence on which the commissioners act shall be made part of the record so as to be available for review by the court on appeal. If the legislature had intended that the orders might be based upon evidence outside of the record it is not likely that it would have provided with the care it did that the evidence should be reduced to writing, and be certified to the district court on appeal. In other words, we are of the opinion that the legislature intended that the orders of the commissioners must be based upon evidence submitted to them at the hearing or hearings; and that on appeal the validity and lawfulness of the orders must be determined by the evidence contained in the record certified to the court; and that in reviewing such orders the court must exercise its own independent judgment upon such facts and the law applicable thereto. It is unnecessary to determine what effect, if any, the district court ought to give to the findings of the commissioners on disputed questions of fact, when it is considering an appeal from a commissioners' decision. But we are entirely satisfied that the provision in § 39 of the act to the effect that "the final valuation by the commissioners . . . shall be prima facie evidence relative to the value of the property" has no application on appeal. The preceding portions of that section indicate what is meant by the term "final valuation." An order of the commissioners fixing a valuation is subject to appeal. Utility Act, § 42. When an appeal is taken the validity and lawfulness of the order will be determined upon the evidence on which it is based, and the legal principles applicable thereto, giving whatever weight to which they may be entitled, if any, to the findings of the Commissioners upon disputed questions of fact the determination of which involves the credibility of witnesses who testified orally before the Commissioners.

But say the relators: Suppose the commissioners refuse to receive competent evidence, and certify up an incomplete or false record? Then the court is in any event limited to a review of, and must accept,

the record as so certified.    We cannot agree with the contention thus
advanced.    The district court is given power to entertain appeals from
the decisions of the railroad commissioners.    The power is not an
empty one.    It was granted for certain purposes, and the court is
entitled to use whatever instrumentalities are recognized in law as the
proper ones to make its power effective.    The court has power to affirm
or to set aside the orders appealed from, as the facts and law may war-
rant.    If it appears that the commissioners have certified an incorrect
record the court has ample power and means to cause the record to
be corrected.    If on appeal it appears that the commission has re-
fused to admit relevant and competent evidence offered by a party, or
otherwise prevented him from having a fair hearing, the order will of
course be set aside, and a further hearing afforded.    And while the
act contains no express provision that the cause may be remanded to
the commissioners, for further proceedings, we think that the power
to review the facts and apply the law, and to reverse an order of the
commissioners in whole or in part necessarily includes the power to
remand for the correction of whatever error is shown to have been
committed.    The power to remand has been recognized by the United
States Supreme Court as regards orders of the interstate commerce
commission.    In Texas & P. R. Co. v. Interstate Commerce Com-
mission, 162 U. S. 197, 40 L. ed. 940, 5 Inters. Com. Rep. 405, 16
Sup. Ct. Rep. 666, which was an action in equity by the interstate
commerce commission to compel the railway company to obey one of
its orders, the Supreme Court of the United States said:    "If the
circuit court of appeals was of the opinion that the Commission in
making its order had misconceived the extent of its powers, and if
the circuit court had erred in affirming the validity of an order made
under such misconception, the duty of the circuit court of appeals was
to reverse the decree, set aside the order, and remand the cause to the
commission, in order that it might, if it saw fit, proceed therein ac-
cording to law.    The defendant, was entitled to have its defense con-
sidered, in the first instance at least, by the commission, upon a full
consideration of all the circumstances and conditions upon which a
legitimate order could be founded."

It is next contended that the act is invalid because of unwarranted

delegation of legislative powers to the Board of Railroad Commissioners in this:

1. That the board of railroad commissioners are part of the executive department of the state government, and that powers and duties of the nature delegated and imposed by the Public Utilities Act cannot constitutionally be conferred upon them.

2. That the act "does not in certain particulars, lay down rules and methods for the board invested with the power to follow in arriving at its conclusions and performing its functions."

In our opinion neither contention is tenable. The first is completely answered by the constitution which provides: "The powers and duties of the . . . commissioners of railroads . . . shall be prescribed by law." N. D. Const. § 83.

The second contention, we think, has been so completely settled adversely by the decisions already cited as to require no further consideration here. It is sufficient to say that no provision has been pointed out wherein the legislature has abdicated its law-making function and attempted to confer that power upon the commissioners. It has it is true, authorized an administrative board, within the limits prescribed by the legislature, to adopt certain rules and regulations, and further authorized such board to see that the legislature's will as expressed in the statute is carried out by the persons or corporations over whom such board is given administrative powers. But to this there is no constitutional objection. 6 R. C. L. p. 179; McKinley v. United States, 249 U. S. 397, 63 L. ed. 668, 39 Sup. Ct. Rep. 324; New York ex rel. Lieberman v. Van De Carr, 199 U. S. 552, 50 L. ed. 305, 26 Sup. Ct. Rep. 144; Brazee v. Michigan, 241 U. S. 340, 60 L. ed. 1034, 36 Sup. Ct. Rep. 561, Ann. Cas. 1917C, 522; Hall v. Geiger-Jones Co. 242 U. S. 538, 61 L. ed. 480, L.R.A.1917F, 514, 37 Sup. Ct. Rep. 217; Douglas v. Noble, 261 U. S. 165, 67 L. ed. 590, 43 Sup. Ct. Rep. 303.

See, also Selective Draft Law Cases (Arver v. United States) 245 U. S. 365, 62 L. ed. 349, L.R.A.1918C, 361, 38 Sup. Ct. Rep. 159, Ann. Cas. 1918B, 856; State ex rel. Linde v. Taylor, 33 N. D. 76, L.R.A.1918B, 156, 156 N. W. 561, Ann. Cas. 1918A, 583.

It is also contended that the statute is invalid because it delegates judicial powers to the commissioners. In their brief relators say:

"The sections of the act of which we complain as delegating judicial functions to the board of railroad commissioners are . . . that portion of § 37 which requires the commission to exclude from valuations all unearned values or unearned increment without further limitation or rule, and that portion of § 39 of the act which, taken in conjunction with § 35 of the Act, makes the final valuation by the commissioners not only prima facie evidence as to the value of the property, but, due to the fact that such prima facie case cannot be rebutted upon appeal, makes such valuation conclusive upon the courts."

These contentions have already been answered, and need no further consideration.

It is asserted, however, that the terms "unearned values" or "unearned increment" includes "going value;" and it is said that under the rule established by the authorities "going value" is an element which must be included in the valuation for rate making purposes. In passing, it may be said that the terms "unearned values" and "unearned increment" seems to be at least as definite as "going value." The merit of the objection, however, is not here. For the relators concede that the commissioners have construed the terms "unearned values" and "unearned increment" to apply only to land values. In other words, there is no contention that the Commissioners have applied or intend to apply the terms to the injury of the relators. Hence, they cannot be heard to assert that the statute is rendered invalid on account of these provisions, for, "a litigant can be heard to question the validity of a statute only when, and in so far as, it is applied to his disadvantage." Rindge Co. v. Los Angeles County, 262 U. S. 700, 67 L. ed. 186, 43 Sup. Ct. Rep. 689. See also State ex rel. Linde v. Taylor, supra.

It is also contended that the statute is invalid because the penalties imposed for violation of an order of the railroad commissioners are so severe as to intimidate utility companies into compliance with such orders regardless of their invalidity.

A sufficient answer is that the penalty provisions of the act are not involved. "A litigant can be heard to question the validity of a statute only when, and in so far as, it is applied to his disadvantage." Rindge Co. v. Lon Angeles County, supra. The penalty provisions can become involved only after an order of the railroad commission is

made. It ought not to be assumed that any order will be made which will infringe upon any of the relator's rights. New York ex rel. Lieberman v. Van De Carr, 199 U. S. 552, 50 L. ed. 305, 26 Sup. Ct. Rep. 144; Hall v. Geiger-Jones Co. 242 U. S. 539, 61 L. ed. 480, L.R.A.1917F, 514, 37 Sup. Ct. Rep. 217, Ann. Cas. 1917C, 643; Douglas v. Noble, supra; Merrick v. N. W. Halsey & Co. 242 U. S. 568, 61 L. ed. 498, 37 Sup. Ct. Rep. 227. As was said by the United States Supreme Court in Merrick v. N. W. Halsey & Co. supra: "There is a presumption against wanton action by the Commission, and if there should be such disregard of duty, a remedy in the courts is explicitly given." And in Hall v. Geiger-Jones Co. 242 U. S. 539, 61 L. ed. 480, L.R.A.1917F, 514, 37 Sup. Ct. Rep. 217, Ann. Cas. 1917C, 643. "If in special cases there may be controversy, those cases the statute takes care of; an adverse judgment by the commissioner is reviewable by the courts." Under the statute under consideration here every order which may be entered by the commissioners against the relators can be entered only after full hearing, pursuant to notice. And the relator company has an absolute right to a judicial review of any order which may be made affecting its interests. It may have such order stayed. The question whether it shall or shall not be stayed is not for the commissioners to say. That question is left for the courts to determine. In this case the company applied for and obtained a stay of all proceedings pending the appeal. Furthermore, if the penalty provisions are void, that will not affect the remainder of the statute. Those provisions did not form the inducement for the enactment of the law, they were merely added to aid in accomplishing the objects which the legislature had in mind. If they are invalid, they may be stricken from the law without in any manner affecting the validity of the provisions which are involved in the inquiry which the relators seek to have restrained. Louisville & N. R. Co. v. Garrett, 231 U. S. 298, 58 L. ed. 229, 34 Sup. Ct. Rep. 48; Granada Lumber Co. v. Mississippi, 217 U. S. 433, 54 L. ed. 826, 30 Sup. Ct. Rep. 535; Wilcox v. Consolidated Gas Co. 212 U. S. 19, 54, 53 L. ed. 382, 400, 48 L.R.A.(N.S.) 1134, 29 Sup. Ct. Rep. 192, 15 Ann. Cas. 1034. See also, Merrick v. N. W. Halsey & Co. 242 U. S. 568, 590, 61 L. ed. 498, 510, 37 Sup. Ct. Rep. 227; Wadley Southern R. Co. v.

Georgia, 235 U. S. 651, 664, 59 L. ed. 405, 413, P.U.R.1915A, 106, 35 Sup. Ct. Rep. 214.

Our conclusion is that the Public Utilities Act is not vulnerable to any of the attacks made upon it in this action.

The order appealed from is affirmed.

BRONSON, Ch. J., and BIRDZELL, COOLEY, and BURR, JJ., concur.

Mr. Justice JOHNSON and Mr. Justice NUESSLE, being disqualified, did not participate; Honorable CHAS. M. COOLEY, of the First Judicial District, and Honorable A. G. Burr, of the Second Judicial District, sitting in their stead.