NORTH DAKOTA STATE HIGHWAY COMMISSION, Respond-
ent, v. GREAT NORTHERN RAILWAY COMPANY, a Cor-
poration, Appellant.

(200 N. W. 796.)

**Railroads — statute empowering railroad commissioners to abolish grade
crossing constitutional; record of grade crossing abolition sufficient;
evidence held to sustain finding as to danger of grade crossing abol-
ished.**

Upon an appeal from an order of the Board of Railroad Commissioners re-
quiring a railway company to construct an under-pass in its right of way for
purposes of the Theodore Roosevelt Highway being constructed under Federal
Aid, it is held, for reasons stated in the opinion:—

(a) That, as against constitutional objections, the Board of Railroad Com-
missioners, under chap. 272, Laws 1923, may require the abolition of existing
grade crossings.

(b) That the record, as made before the Board of Railroad Commissioners,
without objection, is sufficient.

(c) That the evidence is sufficient to sustain the finding of the Railroad
Commissioners that the grade crossing involved is dangerous to life and prop-
erty.

Opinion filed November 1, 1924.

Constitutional Law, 12 C. J. § 338 p. 852 n. 76.　Railroads, 33 Cyc. p. 290 n.
56; p. 296 n. 7, 12; p. 299 n. 42 New.

In District Court, Ward County, Lowe, J.

Appellant railway company has appealed from the judgment of the
district court sustaining an order of the Board of Railroad Commis-
sioners requiring the installation of an under-pass upon the Theodore
Roosevelt Highway near Des Lacs.

Affirmed.

*Murphy & Toner,* for appellant.

*Geo. F. Shafer,* Attorney General, *John Thorpe,* Assistant Attorney
General, for respondent.

BRONSON, Ch. J.　This is a proceeding before the Board of Railroad
Commissioners for the construction of an under-pass in the respondent
railroad's right of way on the Theodore Roosevelt Highway near Des

Lacs, N. D. After hearing, the Board made an order requiring the construction of the underpass. The railway company appealed therefrom to the district court. By stipulation the matter was heard and determined in the district court upon the evidence received before, and the record made by, the Board of Railroad Commissioners. The district court affirmed the order of the Board and entered judgment accordingly. From such judgment this appeal has been prosecuted.

On March 19th, 1923, the State Highway Commission filed with the Board of Railroad Commissioners a petition for an order requiring the construction of an under-pass for a highway receiving Federal aid, known as Project No. 83 at the point involved. Notice was given to parties interested for a hearing. On May 11th, 1923, a hearing was had. Parties appeared representing the State Highway Commission and the Bureau of Public Roads; also parties representing the Great Northern Ry. Co. A record was made of the proceedings had.

The material facts, as they appear in this record, are:—the locus in quo is where the so-termed Theodore Roosevelt International Highway crosses the main trunk right of way of the Railroad Company about a mile East of Des Lacs. The said Roosevelt Highway extends across the United States from the Eastern coast to the Western coast. It is a highway proposed and partially, or largely constructed, interstate in its character. Particularly, a portion of this highway in Ward county in which Des Lacs is located has been under construction as Federal Aid Project No. 83. In other words, this particular portion of such highway has received, and will receive, Federal aid under the Federal Highway Act of November 9, 1921, which contemplates a complete system of highways with a State Highway System as a part of the Federal System, under the policy of aid given pursuant to the Federal Bureau of Public Roads. Under this Federal Highway Act aid to the extent of 50% of the cost is allowed where construction follows the requirements of the Act and the rules and regulations of the Bureau prescribed thereunder. Pursuant to this Act and such regulations, this particular highway is known as a Primary Highway, for the reason that it is interstate in its character. For such construction the general principle is stipulated that where a Primary Highway crosses a trunk line, a railway right of way of two or more main tracks, grade separation should be required unless the cost, legal difficulties or physical

conditions render such course impossible. Concerning the proposed construction of the under-pass, the Board of County Commissioners of Ward County agreed to assume a share of responsibility for the work of eliminating the grade crossing. The Federal Bureau tentatively agreed to pay 50% of the cost of constructing the under-pass, whether temporary or permanent. The proposed construction of the under-pass involved a relocation of the highway at the point where it crossed the railroad so as to afford a better facility for the construction of an under-pass. The present grade crossing traverses the railroad right of way at a somewhat acute angle with the tracks. Numerous photographs were introduced of the highway and the railroad at the point involved. Some members of the Board of Commissioners personally inspected the place and became conversant with conditions there existing as to visibility, etc., prior to the hearing held on May 11th, 1923. The commissioners found that the photographs show that the view either way down the railroad tracks is obscured for a vehicle approaching the railroad tracks from either side by reason of a dip in the highway as it approaches the grade, and that this fact was borne out through the personal inspection made by the commission; that further, on the North side of the highway and to the West of the main track there is a passing track and a side track where a train standing would totally obscure the approach of an Eastbound train until it was within 800 feet of the crossing. Further, the Commissioners found that the published time cards of the railway showed that there were eight passenger train movements and four regular freight train movements, besides extra trains over this crossing daily. A traffic census was taken on six different days which showed a traffic varying from 135 to 256 daily movements. The superintendent of the railway also caused a traffic check to be made some time for a seven-hour period on a week day. This check showed 14 automobiles, 10 teams and seven pedestrians who crossed this track at this point; that in other places on the division where the same check was made the traffic would exceed such traffic at the particular point involved anywhere from 10 to 20 times. The record discloses that the hearing held was rather informal but was had without objection by any of the parties; likewise, no objections were made to the personal inspection had by the commissioners. The Railroad Commissioners found that the present grade crossing at the point involved was danger-

ous to life and property and should be eliminated by separating the grade and by the construction of an under-pass; that, further, the G. N. Ry. Company and the State Highway Commission each be required to pay 50% of the cost of construction and that both parties should get together and agree as to how the construction work should be handled.

Before the commissioners, the railway company contended that the commissioners were without authority to order the separation of grades; that there existed no sufficient necessity; that the cost was out of proportion to the public benefit, and that the crossing was not one dangerous to life and property.

Before this court the railway company maintains that the order as made is arbitrary and unreasonable and can not be sustained upon the record; that so far as the showing made is concerned, the crossing involved is rather unimportant and not as dangerous as many other crossings within the state; that the commissioners are without authority by their mere fiat to determine the dangerous character of a crossing and to cause the construction of an under-pass or separation of grades merely as a result of their mere fiat. Further, that the statute imposes a burden upon interstate traffic of the appellant, unlawfully delegates judicial power and, therefore, is unconstitutional; that, finally, the record, as made by the commissioners, is of such an informal nature, with incompetent and hearsay evidence incorporated therein, that the order as made cannot be sustained.

## Opinion.

The constitutional objections are without merit. Appellant's brief proceeds upon the assumption that the commissioners were proceeding under the exercise of a police power. It is well settled that railroad corporations may be required, at their own expense, to abolish existing grade crossings. Erie R. Co. v. Public Utility Comrs. 254 U. S. 394, 408, 65 L. ed. 322, 333, P.U.R.1921C, 143, 41 Sup. Ct. Rep. 169; Chicago, M. & St. P. R. Co. v. Minneapolis, 232 U. S. 430, 438, 58 L. ed. 671, 674, 34 Sup. Ct. Rep. 400. Likewise, the power exercised by the commissioners with relation thereto does not constitute an improper delegation of either legislative or judicial powers. See State ex rel. Hughes v. Milhollan, 50 N. D. 184, 195 N. W. 292. But it is sug-

gested that the Transportation Act of 1920 has inhibited the exercise of this power since it serves to interfere with the powers of the Interstate Commerce Commission concerning interstate commerce. Upon the record this contention is again without merit. Erie R. Co. v. Public Utility Comrs. supra; Railroad Commission v. Southern P. Co. 264 U. S. 331, 68 L. ed. 713, 44 Sup. Ct. Rep. 376 (Decision April 7, 1924); Durham v. Southern R. Co. 185 N. C. 240, 35 A.L.R. 1313, 117 S. E. 17. (See id., 266 U. S. 178, 69 L. ed. 231, 45 Sup. Ct. Rep. 51, Nov. 17, 1924.)

Chapter 272, Laws of 1923, provides:—

"Sec. 1. The Board of Railroad Commissioners of the State of North Dakota upon written application made to it by the State Highway Commission, the Board of County Commissioners of any County, the Board of Supervisors of any Township or upon its own motion shall investigate and determine whether any railroad grade crossing over any state, county or township highway in the state is dangerous to life and property, and may order the same protected in any manner said Board of Railroad Commissioners may find reasonable and proper, including requiring the railroad company to separate the grades.

"Sec. 2. The Board of Railroad Commissioners shall give the railroad company interested such notice of said investigation as it deems reasonable and an opportunity to be heard before any order is made. The railroad company interested may, within thirty days after the service of a copy of such order upon it, appeal to the district court of the county wherein such crossing is situated."

Under this statute the right of review by a court is accorded to the aggrieved party. If the record is insufficient, or the order as made thereupon is illegal or without warrant, the court may take such action as is proper to secure a proper record and a proper order. See State ex rel. Hughes v. Milhollan, 50 N. D. 184, 195 N. W. 292, 298. In the case at bar no objection was made on the part of any of the parties to the method used in securing the evidence and settling the record thereof. The parties stipulated for a review by the trial court upon such record.

. The sole question therefore remains whether upon such record the commissioners were warranted in finding that the construction of an underpass at the point involved was necessary for the reason that the grade crossing there established was dangerous to life and property.

Although the evidence is not in such form as would ordinarily be required in the trial of a case in a court, and although, further, the evidence in the record is somewhat fragmentary, we are nevertheless of the opinion that the evidence is sufficient to sustain and support the finding of the commissioners to the effect that the grade crossing involved was dangerous to life and property. The argument has been made by appellant that this is simply an ordinary country grade crossing upon an open prairie which can not be differentiated from hundreds of other crossings of the same character. In our opinion such an argument assumes too much. The record is sufficient to show that the locus in quo constitutes an important crossing upon two interstate, as well as intrastate, highways, one for the carrier, and the other for the public; that its particular location, considering the acute angle and declivity of its approaches, with relation to the right of way and the train movements upon one or more tracks there, created a situation that might be termed peculiarly dangerous to life and property. Upon such facts the right of the railroad commissioners to find the dangerous character of such crossing is not made dependent upon the fact that no one yet has been killed at this crossing, or that some other crossing in the state may, perhaps, be more dangerous. The proposed cost of this construction is moderate. In fact, the railroad company are only required to pay one-half of the cost thereof. The purposes to be served are wholly salutary. We are satisfied that the ruling of the trial court was proper. The judgment is in all things affirmed with costs. It is so ordered.

CHRISTIANSON, BIRDZELL, NUESSLE, and JOHNSON, JJ., concur.